UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JANE DOE,

               Plaintiff,

      -against-

RONALD DAVID INGBER and JOHN DOES 1-99,

           Defendant.

Case No.: 25-cv-5478(PK)

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO CHANGE VENUE

VERIDIAN LEGAL P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@veridianlegal.com
*Attorneys for Plaintiff*

## Table of Contents

Table of Authorities .......................................................................................................... 3

PRELIMINARY STATEMENT ....................................................................................... 4

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT ............................. 5

ARGUMENT ..................................................................................................................... 6

I.    The Action Could Have Been Brought in a Number of Forums and Courts, Including those in New Jersey and the Eastern District of New York .................................................... 7

II.    The Convenience of the Parties and the Interest of Justice Supports this Case being in the Brooklyn Division ........................................................................................................... 9

III.    Rules for the Division of Business for the Eastern District of New York Do Not Vest Rights in Litigants ........................................................................................................... 14

IV.    Ingber's Assertions about Civil Cover Sheet ................................................... 15

CONCLUSION ............................................................................................................... 16

## Table of Authorities

**Cases**

Demaria v. Nutritional Bevs., LLC, No. 23-cv-7314 (DLI)(JRC), 2024 U.S. Dist. LEXIS
163728, at *9 (E.D.N.Y. Sep. 11, 2024) ............................................................ 11, 12

Gaynor v. Diamond, 2025 LX 319248, at *4 (S.D.N.Y. Aug. 5, 2025) ....................................... 13

Guardian Life Ins. Co. of Am. v. Coe, 724 F. Supp. 3d 206, 214 (S.D.N.Y. 2024).................... 11

Jones. v. Equifax Info. Servs. LLC, 2025 LX 44719, at *2 (S.D.N.Y. May 22, 2025)............... 12

Laguna Ortega v. Trans Union (of Del.), LLC, No. 25-CV-1606 (DG)(PK), 2025 LX 332681, at
*6 (E.D.N.Y. Aug. 13, 2025) ........................................................................... 10, 11

Longsworth v. Cty. of Nassau, No. 17-CV-6787(KAM)(ARL), 2019 U.S. Dist. LEXIS 230495,
at *11 (E.D.N.Y. July 15, 2019) ...................................................................... 6, 15

Mulgrew v. United States DOT, 717 F. Supp. 3d 281, 286 (E.D.N.Y. 2024) ............................... 7

Powell v. Grajales, No. 25-CV-02178 (GRB) (JMW), 2025 LX 394500, at *4 (E.D.N.Y. Aug. 1,
2025) ............................................................................................................. 7, 14, 15

Scherillo v Dun & Bradstreet, Inc., 684 F Supp 2d 313, 317 (EDNY 2010) ........................... 6, 7

United States v. Rare Breed Triggers, LLC, 669 F. Supp. 3d 169, 179 (E.D.N.Y. 2023)............. 7

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................... 6

## PRELIMINARY STATEMENT

When Defendant Ronald Ingber ("Ingber") met Plaintiff, he was an established personal injury attorney in his mid-forties with an office in Mineola, New York and allegedly in the process of divorcing his wife. When Plaintiff met Ingber she was thirty years old and working in the public education system in New Jersey. Ingber showered Plaintiff with dates and trips and eventually convinced her to quit her job, move closer to him, and live – fully supported by him – in a Mineola apartment. Unbeknownst to Plaintiff, the relationship was – almost from its inception – abusive. As the Complaint details, Ingber slowly isolated Plaintiff from her friends and family, made her reliant on him, and then engaged in subtle but enormously destructive online warfare against her which caused her and her family to question her mental stability. During this process, Ingber installed a keystroke recorder on her computer, a GPS/audio recording device in her car, and cameras in her apartment. He convinced her to use his EZ-Pass; downloaded the contents of her phone; gained access to her Google account, including her photographs and videos; and even hired private investigators to overtly follow her so she would know she was being watched. Toward the end of their relationship, he further sent to her friends in New Jersey, family in New Jersey and Florida, and former colleagues in New Jersey her intimate images and health records. Ingber's behavior was all designed to lead her to believe that government officials in New Jersey were after her, cause her to fear even being present in the State of New Jersey, and drive her closer to him on Long Island.

With significant effort, Plaintiff's family was able to intervene, extricate Plaintiff from Defendant Ingber's twisted web, and force her to understand that the individual posing as her savior – Ingber – was really the one destroying her life. Finally free, Plaintiff has re-established herself in New Jersey and is on her way to building a life for herself. But some of the scars that Ingber left – a sexually transmitted infection, chronic fear and paranoia, perpetual worry that

4

others have seen her intimate content, and a feeling of being watched – have not yet (and in some cases will never) heal.

Now that Plaintiff has worked up the courage to stand up to her abuser, Ingber wants to drag Plaintiff back to his home turf, away from her family and all the people to whom he sent the images and other messages, to find justice. As explained below and in Plaintiff's Certification, this matter was properly brought in the Eastern District of New York and should be heard in the Brooklyn Division because it is the most convenient division for the majority of the witnesses, because it is more convenient for Plaintiff and equally convenient for Ingber coming from Mineola, because Ingber directed the messages to New Jersey residents, because of Plaintiff's limited means compared with Ingber's, and because the interests of justice and totality of circumstances – including Plaintiff's fear of Ingber's abuse system and connections on Long Island – support it.

## <u>STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT</u>

The Court is respectfully referred to the Complaint for a full recitation of the facts alleged in the pleadings. Briefly, Plaintiff and Ingber were engaged in an intimate relationship wherein Ingber isolated Plaintiff from her friends, family, and colleagues in New Jersey, persuading her to quit her job there and move into an apartment he provided her on Long Island (Compl. ¶¶1-3). When Plaintiff first attempted to leave the relationship, Ingber convinced her they were both under criminal investigation in New Jersey due to harassing e-mails he had send in the beginning of their relationship (Compl. ¶5). Soon, Plaintiff's intimate content was distributed to people she knew in New Jersey, as were her medical records; before long cars were following her too, and friends and family began receiving phone calls that appeared to be originating from Plaintiff which she did not initiate (Compl. ¶¶117-118, 212, 6-8). Plaintiff was terrified, but to the outside world, Plaintiff's mental health appeared to be in jeopardy (Compl., ¶¶7-9). Plaintiff's

sister attempted to rescue her on multiple occasions but, at least once, was stopped by Ingber who had heard the two women planning and showed up early the next day to prevent it (Compl., ¶¶11).  Plaintiff's sister and mother finally deprogrammed Plaintiff in November of 2022, forcing her to realize she was not being pursued by New Jersey officials, would not need to flee to a non-extradition country with Ingber, and the person behind the private investigators and harassing text messages was Ingber (Compl., ¶¶121-123, 141).

## ARGUMENT

Defendant files his motion to change venue pursuant to both 28 U.S.C. § 1404(a) and the Rules for the Division of Business for the Eastern District of New York (the "Division Rules"). Initially, F.R.C.P. §1404 relates to transfers to a district or division and does not "expressly permit transfers within a district."  Longsworth v. Cty. of Nassau, No. 17-CV-6787(KAM)(ARL), 2019 U.S. Dist. LEXIS 230495, at *7 (E.D.N.Y. July 15, 2019).  The Longsworth Court noted, without deciding the issue, that since the Eastern District of New York has no statutory divisions, it "may not be appropriate to reassign a case within the district pursuant to § 1404." Id.  However, if F.R.C.P. §1404 does apply, assignment is not appropriate under the rule.

Pursuant to F.R.C.P. §1404 "[u]pon motion…any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."

Further, under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Scherillo v Dun & Bradstreet, Inc., 684 F Supp 2d 313, 317 (EDNY 2010).  District courts in the Second Circuit utilize a two-part test for motions to transfer

venue under § 1404(a). <u>Mulgrew v. United States DOT</u>, 717 F. Supp. 3d 281, 286 (E.D.N.Y. 2024).  First, the moving party must demonstrate that whether the case could have been brought in the proposed transferee district.  <u>Id</u>.  If they can accomplish this task, the court must then determine whether transfer is appropriate in the case.  <u>Id</u>.

The moving party, in this case Defendant, "has the burden of establishing by clear and convincing evidence that transfer is justified." <u>Powell v. Grajales</u>, No. 25-CV-02178 (GRB) (JMW), 2025 LX 394500, at *4 (E.D.N.Y. Aug. 1, 2025).

District courts "have broad discretion in making determinations of convenience" and consider factors which include "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of the operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."  <u>Scherillo</u>, <u>supra</u>.  The <u>Scherillo</u> court further referenced other factors, including "the forum's familiarity with the governing law" as well as "trial efficiency and the interests of justice, based on the totality of the circumstances." <u>Id</u>.

Defendant has not demonstrated that the matter should be transferred in the interest of justice and is unable to show that transfer is justified under the relevant factors.

## I.    The Action Could Have Been Brought in a Number of Forums and Courts, Including those in New Jersey and the Eastern District of New York

The first factor to consider is whether the action could have been brought in the proposed transferee forum.  This "requires the court to determine that both personal jurisdiction and venue would lie in the transferee district."  <u>United States v. Rare Breed Triggers, LLC</u>, 669 F. Supp. 3d 169, 179 (E.D.N.Y. 2023).

Ingber does not dispute that personal jurisdiction and venue are appropriate in the jurisdiction selected by Plaintiff. In fact, based on the allegations in the Complaint, jurisdiction and venue could have been found in both the District Court of New Jersey and the Eastern District of New York. Plaintiff and her siblings all live in New Jersey (Compl. ¶¶106, 112). Plaintiff's brother witnessed cars following Plaintiff's vehicle when he drove it and visited Defendant Ingber's house while he and Plaintiff were secretly dating (Compl., ¶78, 112). Plaintiff's sister is deeply involved with this case, having stayed with Plaintiff for a month and thus witnessed: Ingber confessing to being in a relationship with Plaintiff; Plaintiff and Ingber fighting and Ingber admitting to taking Plaintiff's phone; and Ingber showing up at Plaintiff's door first thing in the morning seemingly aware that Plaintiff and her sister had been planning to flee the apartment that morning (Compl., ¶¶9, 79-82, 88, 103-106). Plaintiff's sister further witnessed Plaintiff's mental health spiral due to statements made to Plaintiff by Ingber (Compl. ¶¶99-100, 103-106). Additionally, Plaintiff's sister was similarly victimized by Ingber in that her devices were also accessed by him or someone acting on his behalf (Compl. ¶¶63, 124-127). Further, Ingber paid for Plaintiff's sister's daughter to attend summer camp only to attempt to 1099 Plaintiff's sister once he and Plaintiff had separated (Compl, ¶¶79-80, 150-153). Finally, Plaintiff's sister was among the individuals who received the intimate images sent by Ingber or someone acting on his behalf and who received spoofed messages and harassing calls from Ingber or someone acting on his behalf (Compl., ¶¶118, 154, 175).

Other integral witnesses to this case are also located in New Jersey. Ingber sent e-mails to New Jersey officials as part of his scheme to cause Plaintiff to believe she was being criminally investigated (Compl., ¶¶5-8, 52-55). Plaintiff's co-workers in New Jersey received intimate content sent to them by Ingber or someone acting on his behalf (Compl., ¶¶12, 118).

Plaintiff and her family were followed by cars in New Jersey (Compl. ¶¶110-113, 148). Ingber further claimed that he had received an e-mail from the Prosecutor's Office in New Jersey pertaining to the e-mails he had been sending alleging corruption (Compl., ¶¶90-93).

Plaintiff lives in New Jersey now and lived in New Jersey for a significant period while she and Ingber were in a relationship (Compl., ¶¶ 17, 41, 46, 116).

Plaintiff's parents live in Florida (Compl. ¶121). Plaintiff's parents are integral witnesses due to the fact that Plaintiff's mother was crucial in assisting Plaintiff's sister deprogram Plaintiff following her relationship with Ingber (Compl., ¶122-123). Plaintiff's father further received spoofed messages from Ingber or someone acting on Ingber's behalf (Compl., ¶175). Finally, Plaintiff's mother received Plaintiff's intimate content and medical records from Ingber or someone acting on his behalf on multiple occasions (Compl. ¶¶118, 154, 213).

While Defendant Ingber, his wife, and his children all live in Suffolk County, no other witnesses reside there (Compl., ¶¶18, 73-75). The apartment Ingber rented for Plaintiff as well as Ingber's office are both located in Nassau County (Compl., ¶¶46, 173). While there may be some individuals who work at Ingber's office who witnessed Plaintiff and Ingber's relationship and/or fights, that is the extent of Nassau County's connection to the case.

Plaintiff is unaware where John Does 1-99 reside, but the bulk of their actions took place in New Jersey.

## II.    The Convenience of the Parties and the Interest of Justice Supports this Case being in the Brooklyn Division

While the Ingber and Plaintiff agree the Eastern District of New York is an appropriate venue, Defendant Ingber is unable to demonstrate that any of the factors or the interest of justice warrant transferring this matter from the Brooklyn Division to Central Islip.

As the Court recently noted, "[i]n seeking to meet [its] burden that clear and convincing evidence calls for transfer, [the movant] must establish that at least one of the factors weighs in favor of transfer, and that any factors weighing in favor of transfer outweigh any factors weighing against it. If all the factors are neutral, the transfer motion should be denied." Laguna Ortega v. Trans Union (of Del.), LLC, No. 25-CV-1606 (DG)(PK), 2025 LX 332681, at *6 (E.D.N.Y. Aug. 13, 2025).

Examining the nine relevant factors and, with the understanding that a determination of convenience is within the broad discretion of the court, Plaintiff respectfully asserts that this case is in the appropriate district.

***Plaintiff's Choice of Forum***:  Plaintiff has selected the Eastern District of New York, Brooklyn Division as the forum and courthouse in which her case is to be heard.  Both parties agree, and Defendant Ingber does not dispute, that the Eastern District of New York is an appropriate forum for this action.

***Convenience of the Witnesses***:  Trying this case at the Brooklyn courthouse as opposed to the Central Islip courthouse splits the difference in terms of convenience of the witnesses (Cert. ¶2).  Below is a list of known witnesses as detailed in the complaint.

| Witness | Miles/Time to Brooklyn (appx.) | Miles/Time to Central Islip (appx.) |
|---|---|---|
| Plaintiff's sister | 13 miles/50 minutes | 62 miles/1 hour 40 minutes |
| Plaintiff's brother | 13 miles/50 minutes | 62 miles/1 hour 40 minutes |
| Plaintiff's N.J. colleagues & N.J. officials | 6.5 miles/45 minutes | 63 miles/1 hour 42 minutes |
| Plaintiff's parents | Multi-hour flight | Multi-hour flight |
| Amy Ingber | 39 miles/1 hour 5 minutes | 15 miles/20 minutes |
| Ingber's office employees | 24 miles/45 minutes | 30 miles/45 minutes |

"The convenience of witnesses, in particular, is often cited as the most important factor." Laguna, supra, citing Guardian Life Ins. Co. of Am. v. Coe, 724 F. Supp. 3d 206, 214 (S.D.N.Y. 2024)(finding "[t]he convenience of parties and witnesses is considered the essential criteri[on] under the venue statute").  "In analyzing the convenience of witnesses, 'the inquiry is not whether the party witnesses could easily get to [the plaintiff's choice of forum]; the inquiry is which of the two forums is *more* convenient.'" (Id.). "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant" (Id.).  The Brooklyn courthouse is more convenient for every New Jersey witness and even for Plaintiff's parents who, though they live in Florida, will be able to stay with their children and make a shorter trip to the courthouse in Brooklyn as opposed to Central Islip (Cert., ¶3).  As Plaintiff has placed her emotional state at issue, it is likely she will call upon those with knowledge about her emotional state, such as medical providers and friends, all of whom are located in New Jersey.  More so, the federal courthouses are an even split, time-wise, from Ingber's office.  The sole witness who will need to travel further would be Amy Ingber, Defendant's wife, who would need to travel 39 miles to Brooklyn rather than 15 miles to Central Islip.

Further, while Plaintiff is not yet certain which electronic parties she will call at trial, she is likely to require a witness from Verizon Wireless to authenticate Defendant Ingber's phone records, and the headquarters for Verizon is located in Manhattan, making it closer to the Brooklyn courthouse.  "The convenience of non-party witnesses is accorded more weight than that of party witnesses." Demaria v. Nutritional Bevs., LLC, No. 23-cv-7314 (DLI)(JRC), 2024 U.S. Dist. LEXIS 163728, at *9 (E.D.N.Y. Sep. 11, 2024).  The courthouse in Brooklyn is the more convenient Eastern District courthouse.

***Location of Relevant Documents and Ease of Access to Sources of Proof***: "The location of documents and records is not a compelling consideration when records are easily portable"/ <u>Id.</u>, 9).  Here, much of the harassment which took place was undertaken electronically and, "given the technological age in which we live, with the widespread use of, among other things, electronic document production" this factor is, at most, neutral.  <u>Id</u>.  More so, there is a higher likelihood relevant documents would exist in New Jersey, closer to the Brooklyn Courthouse, than the Central Islip Courthouse.  For example, police reports were made in New Jersey, and e-mails received by Plaintiff's former New Jersey employer and New Jersey officials are located there.  To the extent that members of the New Jersey police force or New Jersey school employees will need to introduce records, the Brooklyn courthouse is most convenient.

***Convenience of the Parties***: Like with witnesses, the Brooklyn courthouse is mutually inconvenient for both Plaintiff and Ingber.  Plaintiff is unaware of the identities of John Does 1-99 and so is unaware of which courthouse is more convenient for those who assisted Ingber in capitulating his harassment.  Because transferring this case from Brooklyn to Central Islip would add an approximate additional fifty minutes to Plaintiff's commute compared to Brooklyn, (and would be approximately the same commute time from Defendant's office), this factor favors the case remaining in Brooklyn.

***Locus of the Operative Facts***: "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises."  <u>Jones. v. Equifax Info. Servs. LLC, 2025 LX 44719, at *2 (S.D.N.Y. May 22, 2025)</u>.  As Ingber's harassment was mostly virtual and took place when Plaintiff resided in both New Jersey and New York, it is difficult to pinpoint where the locus of the operative facts lies in this case.  However, the conduct complained of occurred when Plaintiff was in New Jersey and was generally designed to drive

her back to New York.  Given Ingber's involvement of New Jersey officials, sending of content to New Jersey residents, sending of cars to harass Plaintiff and her family in New Jersey and general torment of a New Jersey resident, it is arguable that the locus of the operative facts might even be in New Jersey.  As a result, this factor is neutral.

   **The Relative Means of the Parties:** "In determining whether the relative means of the parties weighs in favor of a transfer, 'a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum.'" Gaynor v. Diamond, 2025 LX 319248, at *4 (S.D.N.Y. Aug. 5, 2025).  "A significant financial disparity between the parties may support or discourage transfer of venue" (*Id.*).  Here, Plaintiff works in education (Compl. ¶24).  She resides in a rented apartment in New Jersey (Cert. ¶10).  Conversely, Defendant Ingber has been an attorney for decades and resides in a 1.9 million dollar home[1].  Everything about the parties' relationship demonstrates the uneven financial circumstances between them, with Defendant Ingber paying for Plaintiff's Long Island apartment and living expenses, her niece's summer camp, vacations with his family, and telling Plaintiff "when you have money anything can be done for you" (Compl., ¶¶11, 46-49, 74, 79, 218).  This factor weighs in favor of the case remaining in Brooklyn.

   **Availability of Process to Compel Attendance of Unwilling Witnesses**: This factor requires the Court to consider its "power to compel attendance of unwilling witnesses, as a district court can only subpoena witnesses within the district or within 100 miles of the [court]." (*Jones,* at 13).  Here, the only witnesses which Plaintiff knows to reside more than 100 miles away from the one of the courthouses (in fact both of the courthouses) are her parents.  Accordingly, there is no reason to believe that any witnesses living more than 100 miles away from the courthouse will not appear and this factor is neutral.

[1] https://www.zillow.com/homedetails/23-Majestic-Dr-Dix-Hills-NY-11746/59586058_zpid/

***Forum's Familiarity with the Governing Law:*** Plaintiff posits that both divisions are familiar with the relevant laws, making this factor neutral.

***Trial Efficiency and the Interests of Justice:*** While the parties were together, Defendant Ingber often used his position as an attorney to intimidate and create fear in Plaintiff. Ingber did this through boasting his claimed ties to judges, attorneys, and police on Long Island (Cert, ¶ 7). At one point Ingber even placed Plaintiff on the telephone with a person he identified as a judge on Long Island. Further, Plaintiff knows of Defendant Ingber's connections on Long Island, generally, and avoids visiting whenever possible due to concern for her safety (Cert., ¶15). Ingber frequently boasted of his connections, familiarity with the laws and legal procedures, and ability to pay someone to do almost anything (Cert., ¶ 14). Between her fear of being on Ingber's territory and the added time and expense it would cause her to litigate this matter nearly two hours away from home, Plaintiff argues it is in the interests of justice that the matter be heard in Brooklyn.

As set forth above, the factors weigh in favor of Brooklyn retaining jurisdiction.

### III.    Rules for the Division of Business for the Eastern District of New York Do Not Vest Rights in Litigants

In the alternative, Ingber argues that the case should never been assigned to Brooklyn, and since Ingber is personal injury attorney who works in Nassau County and lives in Suffolk County the case should be assigned to the Central Islip courthouse pursuant to the Division Rules.

The Division Rules permit a court to transfer a civil case assigned to the Brooklyn division of the Eastern District New York to the Central Islip division "in the interests of justice." <u>Powell</u>, supra.

Defendant overlooks the fact the first line of the rules provides that the rules are "adopted for the internal management of the caseload of the Court and shall not be deemed to vest any rights in litigants or their attorneys[.]"  As Judge Wicks stated in Powell:

> It is important to note that these guidelines "are adopted for the internal management of the caseload" and "shall not be deemed to vest any rights in litigants or their attorneys." Division Rules at 1. There is no indication or reason why this case could not have been brought in Brooklyn besides the internal management system designating this case to this Courthouse. Powell, supra.

Because the Division Rules "expressly provide that they do not 'vest any rights in litigants or their attorneys'… reassignment is only warranted where it is in the interest of justice." Longsworth v. Cty. of Nassau, No. 17-CV-6787(KAM)(ARL), 2019 U.S. Dist. LEXIS 230495, at *11 (E.D.N.Y. July 15, 2019).

Ingber has not even attempted to demonstrate that this matter must be reassigned to Central Islip in the interest of justice.  Accordingly, because these rules are internal and do not provide Defendant Ingber with any rights, his argument using the standard set forth under these rules should be disregarded.

### IV.    Ingber's Assertions about Civil Cover Sheet

Defendant Ingber takes issue with the answers Plaintiff provided on the civil cover sheet, falsely asserting it contains knowingly false information.  As to 3(a) which asks "Did a substantial part of the events or omissions giving rise to claim or claims occur in Nassau or Suffolk?" while some of the events giving rise to a claim occurred in Nassau or Suffolk, the large majority were directed at her and others in New Jersey and occurred while she was living or present in New Jersey.  See Complaint As to question 3(b), which asks whether "the majority of defendants reside in Nassau or Suffolk County" Plaintiff is unaware whether the majority of

defendants reside in Nassau or Suffolk County.  Defendant Ingber is just one of many

defendants.  As to 3(c) relating to property at issue in Nassau or Suffolk County, Defendant

agrees there is none.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this court deny Defendant

Ingber's motion in its entirety.

Dated: November 3, 2025
      New York, New York

             VERIDIAN LEGAL P.C.

             By: _____/Daniel S. Szalkiewicz_____
             Daniel S. Szalkiewicz
             Cali P. Madia
             *Attorneys for Plaintiff*