Daniel S. Szalkiewicz, Esq. (DS2323)
VERIDIAN LEGAL P.C.
23 West 73rd Street, Suite 102
New York, New York 10023
Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE,<br><br>         Plaintiff,<br><br>     v.<br><br>RONALD DAVID INGBER and JOHN DOES 1-99,<br><br>         Defendants. | Case No. Case No.: 25-cv-5478(PK) |

**DECLARATION OF JANE DOE**

I, JANE DOE, being of full age, hereby declare:

1.  I am the Plaintiff in the above-captioned case. I submit this Declaration in opposition to Defendant Ingber's request to transfer the case from the Brooklyn courthouse to the courthouse in Central Islip.

2.  Initially, I have run basic searches on the time/distance for the parties and witnesses to travel from their homes/workplaces to the different courthouses. I believe the table below to be an accurate estimate of the relevant mileage/times:

| Witness | Miles/Time to Brooklyn (appx.) | Miles/Time to Central Islip (appx.) |
|---|---|---|
| Plaintiff's sister | 13 miles/50 minutes | 62 miles/1 hour 40 minutes |
| Plaintiff's brother | 13 miles/50 minutes | 62 miles/1 hour 40 minutes |
| Plaintiff's N.J. colleagues & N.J. officials | 6.5 miles/45 minutes | 63 miles/1 hour 42 minutes |

1

| Plaintiff's parents | Multi-hour flight | Multi-hour flight |
| --- | --- | --- |
| Amy Ingber | 39 miles/1 hour 5 minutes | 15 miles/20 minutes |
| Ingber's office employees | 24 miles/45 minutes | 30 miles/45 minutes |

3.      While the difference between the Brooklyn and Central Islip courthouses would seem irrelevant to my parents' travel time, I am certain they would stay with me or one of my siblings – all of whom reside in New Jersey – if required to appear for this litigation. Accordingly, it would be more convenient for them to make the trip from New Jersey to Brooklyn, just as it would be for any other witness traveling from New Jersey.

4.      While Ingber resides in Suffolk County, his office is in Mineola, which is in Nassau County. During the course of our relationship, Ingber spent a significant amount of his time in Nassau County.

5.      I have also become aware that Ingber moved another young woman into the same apartment in which I was living following our separation. While I am unaware whether he is still leasing that apartment for her, given everything I know about Ingber, I am confident he has her or another young woman residing there or near his Nassau County office and spends a significant amount of time there.

6.      My basis for forming that belief is finding pictures of my furniture at that apartment listed for sale on Facebook by a young woman whose photographs reveal she is/was living in that apartment and had recently traveled to many of the same vacation locales to which Ingber took me.

7.      As the courthouses are equal distances from Mineola, I can think of little other reason Ingber would have interest in transferring the case to Central Islip other than his familiarity with the courts and judges on Long Island.

8. Ingber has been an attorney for many decades and owns a highly successful personal injury law firm on Long Island.

9. Ingber's financial success is what allowed him to rent an apartment for me, pay for my daily living expenses, fund my niece's summer camp experience, take us on nice vacations, and otherwise live comfortably, all while he also owned a nearly two-million-dollar home and provided a financially stable life for his wife and two sons.

10. I work in the public education system in the State of New Jersey, where I earn significantly less than $100,000 per year. I reside in a rental apartment.

11. Saying Defendant Ingber's income dwarfs mine would be an enormous understatement.

12. Defendant Ingber is a successful attorney who constantly boasted about his connections to attorneys, judges, and police on Long Island.

13. As he handles personal injury matters on Long Island, I am also aware of his familiarity with all of the private investigation agencies there.

14. Indeed, Ingber often mentioned – partially to scare me and partially because it was true – that he could pay someone to do almost anything. Throughout the course of our relationship and afterward, I frequently saw this with my own eyes.

15. It is because of all this that I avoid visiting Long Island whenever possible. I simply do not know what Ingber is capable of and I am terrified of putting myself in a position to find out. He has already done so much damage to my life and I cannot imagine allowing him to do more.

16. I also cannot overstate my concern – based on things Ingber told me – that he would be able to affect the outcome of a case heard on Long Island. While I have the utmost

faith in the judicial system, my time with Ingber has left me perpetually paranoid that there is little I could do on Long Island without him knowing about it and influencing it.

17. Traveling to Central Islip would not just be terrifying for me, it would also be a financial hardship as a single court date would require approximately 3.5 hours in the car – more, depending on traffic. It would result in more time off work, more time away from family, and the loss of time that I would otherwise use to save money by grocery shopping, cooking for myself, doing laundry, and tending to my health.

18. While I am confident that members of my family *would* travel to Central Islip to testify on my behalf, the fact remains that such travel time for them also doubles if they need to go to Central Islip.

19. I do not think I will ever be on an even playing field as Ingber. He is a wealthy attorney with deep ties to the courts. On top of that, given he was able to listen to my conversations, look at every photo I had ever taken on my phone, and review all of my text and e-mail communications, he is very well aware of how I think and how deeply fearful I am of him. I have no doubt he will use all of this to his advantage in this litigation.

20. Likewise, Ingber is not the only defendant in this action. My complaint details the third parties he enlisted to harass and torture me.

21. I respectfully ask this court not to force me to travel to Central Islip to right the wrongs he has committed against me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 3, 2025

                                              */s/ Jane Doe*
                                              Jane Doe