UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANE DOE,

                Plaintiff,

      -against-

RONALD DAVID INGBER, AMY INGBER, and
JOHN DOES 1-99,

                Defendant.

Case No.: 25-cv-5478(PK)

# MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION TO EXTEND SERVICE PERIOD

VERIDIAN LEGAL P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@veridianlegal.com
*Attorneys for Plaintiff*

1

Table of Contents

Table of Authorities ........................................................................................................ 3

PRELIMINARY STATEMENT ....................................................................................... 4

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT ............................................ 4

ARGUMENT ................................................................................................................. 5

**I.   Plaintiff's Time to Serve Defendant Should be Extended** .............................................. 5

CONCLUSION............................................................................................................... 10

**Table of Authorities**

**Cases**

*Adams v Abrahim*, 2026 US Dist LEXIS 23505, at \*16 [SDNY Feb. 3, 2026, No. 24-CV-9378 (LAK) (OTW)]...................................................................................................................... 7, 9

*Agnone v Zoi Foods Corp.*, 2025 US Dist LEXIS 61145, at \*5 [EDNY Mar. 31, 2025, No. 24-CV-08202 (JMW)]............................................................................................................. 5

*Fried v NY State Off. of Children & Family Servs.*, 2008 US Dist LEXIS 125596, at \*10 [EDNY July 18, 2008, No. CV 05-5522 (NGG) (AKT)]................................................................. 7, 8

*Old Republic Ins. Co. v Pac. Fin. Servs. of Am., Inc.*, 301 F3d 54, 57 [2d Cir 2002] ................... 6

*Rosales v Pepe's Rest. Group LLC*, 2025 US Dist LEXIS 130631, at \*20 [SDNY July 9, 2025, No. 25-cv-1744 (LJL)]................................................................................................... 5

*Tingyao Lin v Yuri Sushi, Inc.*, 2025 US Dist LEXIS 28802, at \*8 [SDNY Feb. 17, 2025, No. 18-CV-528 (GBD) (OTW)] ............................................................................................... 6

*Tuccillo v Tobin*, 2024 US Dist LEXIS 228966, at \*10 [EDNY Dec. 18, 2024, No. 13-CV-04525 (JMA)(SIL)].................................................................................................................. 6

## PRELIMINARY STATEMENT

## STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

The Court is respectfully referred to the Amended Complaint for a full recitation of the facts alleged in the pleadings.   Briefly, Plaintiff and Ingber were engaged in an intimate relationship wherein Ingber isolated Plaintiff from her friends, family, and colleagues in New Jersey, persuading her to quit her job there and move into an apartment he provided her on Long Island (Compl. ¶¶1-3).  When Plaintiff first attempted to leave the relationship, Ingber convinced her they were both under criminal investigation in New Jersey due to harassing e-mails he had send in the beginning of their relationship (Compl. ¶5).  Soon, Plaintiff's intimate content was distributed to people she knew in New Jersey, as were her medical records; before long cars were following her too, and friends and family began receiving phone calls that appeared to be originating from Plaintiff which she did not initiate (Compl. ¶¶120-121, 215, 6-8).  Plaintiff was terrified, but to the outside world, her mental health appeared to be in jeopardy (Compl., ¶¶7-9).  Plaintiff's sister attempted to rescue her on multiple occasions but, at least once, was stopped by Ingber who had heard the two women planning and showed up early the next day to prevent it (Compl., ¶¶11).  Plaintiff's sister and mother finally deprogrammed Plaintiff in November of 2022, forcing her to realize she was not being pursued by New Jersey officials, would not need to flee to a non-extradition country with Ingber, and the person behind the private investigators and harassing text messages was Ingber (Compl., ¶¶124-125, 144).

While the vast majority of Defendant's harassment was undertaken anonymously, Plaintiff was successful in tracing one phone number and a series of text messages back to Ingber through Verizon Wireless records (Compl. ¶¶172-181).   As evidenced in the Amended Complaint, the messages sent by the phone number associated with Ingber mirror the anonymous

messages in tone, wording, and substance, and likewise appear designed to intimidate and harass Plaintiff. (Id.).

<b><u>ARGUMENT</u></b>

**I.     Plaintiff's Time to Serve Defendant Should be Extended**

"[U]pon a plaintiff's showing of 'good cause' for the failure to timely serve, 'the court *must* extend the time for service for an appropriate period.'" (*Agnone v Zoi Foods Corp.*, 2025 US Dist LEXIS 61145, at *5 [EDNY Mar. 31, 2025, No. 24-CV-08202 (JMW)]).  "In considering whether good cause exists, courts within this Circuit 'weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay.'" (*Id.*, 6). Good cause is found in "'exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" (*Id.*).  Further supporting Plaintiff's request for additional time to serve is "the Second Circuit's longstanding 'preference that litigation disputes be resolved on the merits'" (*Rosales v Pepe's Rest. Group LLC*, 2025 US Dist LEXIS 130631, at *20 [SDNY July 9, 2025, No. 25-cv-1744 (LJL)]).

**A.  Plaintiff's Reliance on Representations of Process Server's Sworn Statement Constitutes Reasonable Efforts and Good Cause to Extend Service Period**

The Summons in this case was issued on October 1, 2025.  On October 3, 2025, Plaintiff's counsel retained the services of ABC Legal to personally serve Defendant (Decl. 3). On October 6, 2025, Plaintiff's counsel was alerted that Defendant had been served (Decl. 4-5). The resulting proof of service sent to Plaintiff – declared to be true under penalty of perjury by process server Terence Kelly – indicated that the process server, Terence Kelly, had personally served the summons on Defendant on October 6, 2025 at 9:50 a.m. (**Exhibit 3**).  The proof of service contained a description of Defendant which fit what Plaintiff believed to be true about

5

Defendant's hair color, race, and build, though apparently understated his height (*Id.*).  Plaintiff additionally received from the process server an image of Defendant's house as well as proof a car was parked in Defendant's driveway at the time of service (**Exhibit 4**).  Defendant's counsel filed a Notice of Appearance on the docket the following day (**Exhibit 5**).  Having no reason to believe Defendant had not been properly served, Plaintiff's counsel uploaded the relevant proof of service onto the docket.  After that, Defendant's counsel filed a Motion to Change Venue, a Cross Motion to Proceed Using a Pseudonym, a Pre-Motion Letter, a Reply to his Motion to Change Venue, and a letter seeking to adjourn a scheduled conference.  At no point was it mentioned that Defendant had not been properly served and so Plaintiff made no further attempts to serve him.

"In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that [defendant] was properly served with the complaint" (*Old Republic Ins. Co. v Pac. Fin. Servs. of Am., Inc.*, 301 F3d 54, 57 [2d Cir 2002]).  More so, "[a] process server's sworn statement of service creates a presumption that service has been effectuated." (*Tuccillo v Tobin*, 2024 US Dist LEXIS 228966, at *10 [EDNY Dec. 18, 2024, No. 13-CV-04525 (JMA)(SIL)]).  While "this presumption may not apply where the affidavit is 'too conclusory or contains insufficient facts upon which a presumption of correct service could be based'" the affidavit of service here contains a plethora of information about service which would lead a reader to believe that service was both valid and captured by camera. (*Tingyao Lin v Yuri Sushi, Inc.*, 2025 US Dist LEXIS 28802, at *8 [SDNY Feb. 17, 2025, No. 18-CV-528 (GBD) (OTW)]).  Here, Plaintiff – as a court would – presumed that service was properly effectuated following receipt of a detailed affidavit of process which provided that the process server "personally served the summons on the

6

individual" at Defendant's home address (**Exhibit 3**). While the proof of service indicates the existence of a security camera, it does not state that Defendant spoke to the process server through the camera or that Defendant was not present; in fact, the proof of service *describes* Ingber, stating he was a brown-haired white male who was between 5'10 and 6'0 tall and weighed over 300 lbs who said "yes when named[,]" understandably giving Plaintiff's counsel the impression that the process server personally served Ingber and that a video camera present on the scene would confirm that. Plaintiff's counsel could not possibly have imagined that the process server never laid eyes on Defendant – the process server's sworn statement indicating Ingber had been personally served contained a reasonably accurate description of the man. Plaintiff's counsel received the proof of service along with the images of Defendant's house with a car parked outside and reasonably believed Defendant had been served.

"The purpose of Rule 4(m) is to prod the slow-footed plaintiff, not to reward the crafty or evasive defendant." (*Adams v Abrahim*, 2026 US Dist LEXIS 23505, at *16 [SDNY Feb. 3, 2026, No. 24-CV-9378 (LAK) (OTW)]). While "inadvertence, neglect, mistake, or misplaced reliance on the attorney's part does not constitute good cause" good cause does exist where "plaintiff's failure to timely serve process in a timely manner was the result of circumstances beyond its control" (*Fried v NY State Off. of Children & Family Servs.*, 2008 US Dist LEXIS 125596, at *10 [EDNY July 18, 2008, No. CV 05-5522 (NGG) (AKT)]). Here, Plaintiff's attorney hired a process server who represented, under oath, that Defendant had been properly served. Plaintiff's attorney promptly uploaded the proof of service onto the docket, clearly demonstrating a belief that Defendant had been properly served. Immediately after service, Defendant's attorney began uploading multiple documents which served as additional confirmation Defendant had been served. While it would be difficult to label Plaintiff "slow-

footed" in this instance, it would certainly be fair to call Defendant "crafty or evasive[;]" he should not be rewarded for keeping knowledge of bad process in his back pocket until Plaintiff's time to serve had run. To hold that it is unreasonable for an attorney to rely on a professional process server's sworn representations about valid service would have absurd results – especially where a Defendant's litigation conduct thereafter gives an impression of proper service.

### B. Prejudice to Defendant is Slight

"There is no *per se* rule on what constitutes prejudice within the context of untimely or improper service of process." (*Fried, supra*). Admittedly, Plaintiff's Complaint against Defendant, as filed, may be time-barred should Defendant's service hijinks be accepted by this Court. In that respect, if Plaintiff's lawsuit continues, Defendant will be prejudiced in that the lawsuit against him would remain. Here, however, Defendant was perfectly willing to accept service of this lawsuit on October 3, 2025 but, upon realizing a potential service issue, decided to weaponize the process server's misrepresentation of valid service for his own gain. More specifically, on October 3, 2025 – before Defendant had been served – Defendant's attorney wrote to Plaintiff's attorney that he was "aware that you filed a lawsuit in this matter" and was "authorized to execute a waiver of service." (**Exhibit 6**). Defendant's attorney's e-mail demonstrates that Defendant was aware of the claims against him and was willing to consent to service.

As expanded upon below, Defendant has been aware of Plaintiff's claims against him for quite some time and was clearly made aware of this lawsuit shortly after it was filed. Ingber's attorney promptly appeared on his behalf and has been advocating for him ever since. Ingber's attempt to avoid this lawsuit by hiding a service flaw has not disadvantaged him in this case in any way.

8

Defendant should not be permitted to transform his lies of omission into prejudice warranting dismissal of Plaintiff's claims.

**C. This Court Should Exercise its Discretion in Granting Plaintiff Additional Time to Serve**

Should this Court not find Plaintiff's reliance on a process server's sworn statement to be reasonable, it should still exercise its discretion and grant Plaintiff additional time to serve Defendant.

> In determining whether a discretionary extension is appropriate in the absence of good cause, a court considers the following four factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service.
> (*Adams, supra*)

In *Adams*, the court extended plaintiffs' time to serve, holding that the "statute of limitations would bar this action from being refiled, satisf[ied] the first factor[,]" defendant "having actual notice of the claims before the action was filed, and may have concealed a defect in service" satisfied the second and third factors, and lack of prejudice to defendant satisfied the fourth factor (*Id.*, 17-18). Lapses of multiple statutes of limitations would bar this action from being filed. Additionally, and importantly, Defendant was aware of Plaintiff's claims. First, Plaintiff sought and obtained a temporary order of protection against Ingber on March 19, 2025; Ingber entered into a Consent Agreement with Civil Restraints on April 14, 2025. Plaintiff's attorney sent Defendant a draft complaint on May 19, 2025 and Ingber's attorneys, Adam Kleinberg and later Richard Portale, discussed potential resolutions with Plaintiff's attorney thereafter (Decl. 10). Defendant had actual notice of the claims – including a copy of Plaintiff's draft Complaint. Defendant's counsel had ample attorney to raise the issue with service in his

9

multiple filings but failed to do so.  As Defendant is a practicing attorney, the issue with service is one he would have been keenly aware of since the date of service.  One can surmise that his decision not to alert the court or Plaintiff of his improper service was a strategic decision.  As explained above, Defendant has not been prejudiced or has been minimally prejudiced by the improper service.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this court deny Defendant Ingber's motion in its entirety.

Dated:  March 20, 2026
       New York, New York

                            VERIDIAN LEGAL P.C.

                            By: _____/Daniel S. Szalkiewicz_____
                            Daniel S. Szalkiewicz
                            Cali P. Madia
                            *Attorneys for Plaintiff*