UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JANE DOE,

                               Plaintiff,                      **MEMORANDUM**
                                                       **AND OPINION**
         -against-                                CV 25-5478 (JS)(AYS)

RONALD DAVID INGBER, AMY INGBER,
and JOHN DOES 1-99,

                            Defendants.
----------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiff commenced this action pseudonymously, and through her "Jane Doe" representative, alleging that she was subjected to years of harassment and abuse by Defendant, Ronald David Ingber ("Defendant" or "Ingber"). See generally Amended Complaint, Docket Entry ("DE") [18]. The Amended Complaint alleges statutory claims pursuant to 15 U.S.C. § 6851 and New Jersey Statute 2A:58D-1. Plaintiff also alleges claims for false light invasion of privacy, publicity given to private life, aiding and abetting, intentional infliction of emotional distress, violation of Civil Rights Law 52-b, harassment, intentional or negligent transmission of a sexual disease, invasion of privacy, fraud voidable transfer under Section 273(a)(1) of the New York Debit and Credit Law, civil conspiracy, and unjust enrichment. In addition to naming Ingber as a defendant, Plaintiff also names Defendant's wife, Amy Ingber, and several John Doe defendants.

By Order dated October 2, 2025, then-assigned Magistrate Judge Kuo granted Plaintiff's motion for a protective order, permitting her to proceed under a pseudonym until further order of the Court. (Order of Kuo, M.J. dated Oct. 2, 2025.) That Order was issued before Defendant was provided an opportunity to oppose the application. Presently before the Court is Defendant's

opposition to Plaintiff's continued use of a pseudonym, as well as his cross-motion to proceed pseudonymously if Plaintiff is granted such protection. For the reasons set forth below, and after consideration of Defendant's opposition to Plaintiff's request to appear pseudonymously, the Court concludes that Plaintiff has not met the burden necessary to continue to appear herein under a pseudonym and further holds that Defendant's cross-motion is denied.

BACKGROUND

Plaintiff and Defendant first met on an online dating site in 2018. (Am. Compl. ¶ 24.) At the time they met, Plaintiff was thirty years old, living in New Jersey, and working in the field of education. (Id. ¶ 25.) Defendant was in his mid-forties, living on Long Island, and working as an attorney. (Id. ¶ 26.) While Defendant was married, he told Plaintiff that he and his wife were separated and in the process of divorcing but still living together. (Id. ¶ 27.)

Throughout their relationship, Defendant pressured Plaintiff to engage in sexual activities that made her uncomfortable. (Id. ¶ 33.) In April 2019, Plaintiff contracted a sexually transmitted infection ("STI"), which she concluded she obtained from Defendant. (Id. ¶¶ 37-38.) When Plaintiff confronted Defendant about her diagnosis, Defendant claimed Plaintiff was responsible for giving him the STI. (Id. ¶ 39.) The two stopped speaking for months but eventually rekindled their relationship. (Id. ¶¶ 40-41.)

In 2020, the parties' relationship grew more serious, with Defendant making frequent trips to New Jersey to see Plaintiff. (Id. ¶ 42.) During this time, Plaintiff began noticing that during Defendant's visits, items around her home would shift – hung clothing items were on the floor, drawers and cabinets were ajar, papers askew. Plaintiff would also find emails that she had not yet opened marked as "read." (Id. ¶ 44.)

In 2021, Defendant knew Plaintiff was unhappy at her current job and told her he believed it was due to corruption, nepotism and politics, even encouraging Plaintiff to file a lawsuit against certain New Jersey officials. (Id. ¶¶ 49-50.) At Defendant's urging, Plaintiff quit her job in New Jersey and moved to Long Island, becoming fully dependent on Defendant monetarily. (Id. ¶ 50.) During this time, Defendant was insistent that Plaintiff shed light on the purported corruption in New Jersey and began sending anonymous emails to government officials in New Jersey using an untraceable email address. (Id. ¶ 54.)

Throughout their relationship, Defendant gifted, planted or left behind items at Plaintiff's that contained tracking software, cameras and/or recording capabilities, some of which recorded the couple having sexual intercourse. (Id. ¶¶ 59-60.) Defendant also left a phone charger in Plaintiff's car that was used to track her whereabouts by GPS and record the audio in her vehicle. (Id. ¶ 63.) Moreover, Defendant gained access to Plaintiff's Google account and email and installed a keystroke tracker on her laptop to track her activities on websites. (Id. ¶ 65.) Finally, Defendant, or someone acting on his behalf, began interfering with Plaintiff's cell phone, as well as her sister's, enabling Defendant to view outgoing and incoming phone calls, delete photographs, and access and delete other content. (Id. ¶ 66.)

Defendant isolated Plaintiff from her friends and family. (Id. ¶ 67.) Plaintiff attempted to move out of the apartment on Long Island on multiple occasions, but Defendant always talked her into staying. (Id. ¶ 71.) On July 5, 2022, Plaintiff told Defendant that their relationship was over and that she was returning to New Jersey. (Id. ¶ 86.) After several hours of fighting, Defendant convinced Plaintiff to stay until September. (Id. ¶¶ 87-92.)

Within days, Defendant began claiming that he had received an email from a prosecutor's office in New Jersey pertaining to the emails he had sent regarding alleged corruption and

nepotism. (Id. ¶ 93.) Plaintiff did not receive any such email but was shown a screen shot of the email by Defendant that stated "It has been brought to my attention that an alleged crime has taken place. Please contact me." (Id. ¶¶ 94-95.) Defendant told Plaintiff that the federal government was pursuing her criminally and that she would face serious criminal consequences if third parties believed she was involved. (Id. ¶¶ 96, 98.)

On July 18, 2022, emails were sent to several people that contained hyperlinks implying that Plaintiff was a prostitute as well as intimate images of Plaintiff. (Id. ¶ 97.) After Plaintiff's mental health began to decline, with Plaintiff suffering from paranoia, depression and anxiety, Defendant confessed that he was responsible for the email blast as retaliation for Plaintiff speaking to other men. (Id. ¶¶ 98, 106.)

On July 23, 2022, Plaintiff confided in her sister about everything that had been happening. (Id. ¶ 107.) Her sister deduced that Defendant was behind it all and convinced Plaintiff to leave. (Id. ¶¶ 107-08.) The next morning, Defendant arrived at the apartment, telling Plaintiff's sister that he feared Plaintiff was suicidal and urging her to check Plaintiff into a mental health facility. (Id. ¶ 109.) Plaintiff ultimately left Long Island with her sister and returned to New Jersey. (Id. ¶ 110.)

Upon her return to New Jersey, Plaintiff began noticing the same car following her from place to place and sitting on her sister's block. (Id. ¶ 113.) Defendant continued to contact Plaintiff, telling her that private investigators in New Jersey had, in fact, been hired to surveil her. (Id. ¶ 114.) Plaintiff's family began to notice cars following them as well. (Id. ¶ 116.) At her sister's urging, Plaintiff hired a private investigator who confirmed that the individuals following Plaintiff and her family were, in fact, other private investigators. (Id. ¶ 118.) Plaintiff continued to speak and meet with Defendant, believing they were both victims in the surveillance. (Id. ¶

119.) When Plaintiff's sister found out she was speaking to Defendant again, she told Plaintiff to leave her house, resulting in Plaintiff returning to Defendant. (Id. ¶ 120.)

In November 2022, over a period of more than two weeks, more than a dozen intimate images depicting Plaintiff were texted to her family and friends. The images also contained sexually graphic text message conversations as well as medical records showing that Plaintiff was diagnosed with an STI. (Id. ¶ 121.) The messages were sent using anonymous phone numbers; yet Defendant insisted they were being sent by New Jersey officials. (Id. ¶ 124.) Plaintiff's family eventually convinced her to terminate her relationship with Defendant for good on November 23, 2022. (Id. ¶ 129.)

DISCUSSION

I.      Legal Standard

Rule 10(a) of the Federal Rules of Civil Procedure requires that all complaints include the names of the parties. See Fed. R. Civ. P. 10(a). Additionally, there is a recognized public interest in maintaining the public nature of all judicial proceedings. Accordingly, any request to seal proceedings – or any part thereof – is the exception and not the rule.

A court considering whether to depart from the norm must balance a request to proceed anonymously against the public interest in disclosure, as well as any prejudice to the opposing party. See Doe v. Combs, No. 24-cv-7973, 2025 WL 1744928, at *1 (S.D.N.Y. June 23, 2025). Even where, as here, litigation involves private parties, there remains a "significant interest in open judicial proceedings." Doe v. Del Rio, 241 F.R.D. 154, 159 (S.D.N.Y. 2006). "Private civil suits . . . do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." Id. Thus, even in purely private matters, the presumption remains that a plaintiff must proceed in their own name. See Doe v. Combs, 24 Civ. 8852, 2025

WL 950685, at *1 (Mar. 28, 2025). In light of this presumption, the party seeking to proceed anonymously "must make a case rebutting" the presumption. United States v. Pilcher, 950 F.3d 39, 45 (2d Cir. 2020).

Plaintiff asserts that 15 U.S.C. § 6851, the statue upon which she bases this action (and which permits civil actions relating to the disclosure of intimate images), "specifically allows plaintiff to proceed anonymously." (Pl. Mem. of Law 5.) While a court is permitted, under the statute, to "grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym," it is not required to do so. 15 U.S.C. § 6851(b)(3)(B). According to Plaintiff, since the enactment of the statute, "numerous federal courts have permitted [plaintiffs] to proceed under similar circumstances using their initials." (Pl. Mem. of Law 5.) However, the case law cited by Plaintiff does not include any cases from the Eastern District or Southern District of New York. Nor has the Court's independent research produced any. Moreover, Plaintiff is not seeking to proceed using her initials; she is seeking to be completely anonymous using a "Jane Doe" identifier.

When determining whether a party makes an appropriate case for proceeding anonymously, courts consider ten non-exhaustive factors, as directed by the Second Circuit. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189-90 (2d Cir. 2008). No one factor is dispositive, and not all factors necessarily pertain to every case. See id. Specifically, courts consider:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm . . . to the party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

Id. (internal citations and quotation marks omitted); see also Pilcher, 950 F.3d at 42.

II.    Consideration of the Foregoing Factors

The first factor to be considered by this Court is whether the lawsuit involves matters of a highly sensitive and personal nature. As the discussion above makes clear, this lawsuit is based upon the parties' intimate personal relationship and their sexual encounters. Accordingly, this matter does indeed involve sensitive information. This fact standing alone, however, does not require anonymity. Were the rule otherwise, every party in a case involving sexual activity would automatically be eligible to proceed anonymously. This is simply not the law. See Combs, 2025 WL 1744928, at *2. Still, as a case involving a consensual sexual relationship, the matters

raised herein are of a sensitive and personal nature. Accordingly, this factor tilts, but only slightly, in Plaintiff's direction.

Factors two and three consider whether there is a risk of retaliatory harm following public exposure of Plaintiff's name. Courts in this district have held that speculative claims of physical or mental harm are insufficient to bolster a request for anonymity. See Michael v. Bloomberg L.P., No. 14-2657, 2015 WL 585592, at *1 (S.D.N.Y. Feb. 11, 2015). Here, Plaintiff's claims as they relate to the second and third factors consist exclusively of conclusory statements and speculation. (Pl. Decl. dated Sept. 30, 2025, DE [2-2] ¶¶ 5, 8-9, 12-16.) Plaintiff submits no evidence of continued harm, nor any evidence of the severity or likelihood of retaliation. Plaintiff simply projects generalized harm, which is insufficient to satisfy her burden. See Doe v. Weinstein, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) ("[T]he potential injury alleged must be more than mere embarrassment or social stigmatization.").

Moreover, prior knowledge of a plaintiff's identity by the defendant weighs against granting a motion to proceed anonymously. See Doe v. United States, No. 16-7256, 2017 WL 2389701, at *3 (S.D.N.Y. June 1, 2017). "[P]ermitting the [P]laintiff to proceed anonymously would do nothing to protect [her] from future retaliatory actions because [Defendant] is already aware of the [P]laintiff's identity." Id.; see also Doe v. Shakur, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying a plaintiff's request to proceed anonymously in part because "those who presumably would have animosity toward [the plaintiff] already know her true identity").

Factor four weighs in favor of anonymity in cases where the party seeking to remain anonymous is a minor. See Combs, 2025 WL 1744928, at *3. Here, the parties are both adults who engaged in a consensual sexual relationship. Accordingly, this factor weighs against Plaintiff.

The fifth factor – whether the lawsuit challenges governmental action – also weighs against Plaintiff. Where, as here, the parties to the lawsuit are private individuals, the interest in public disclosure outweighs any claim to proceed via a pseudonym. Id.

Factor six considers the prejudice to Defendant that flows from allowing Plaintiff to remain anonymous. "In considering whether such prejudice exists, courts examine the reputational damage to defendants, difficulties in conducting discovery, and [the] fundamental fairness of proceeding anonymously." Id. at *4. This factor also weighs against Plaintiff. If only information about Defendant's identity is permitted on the public docket sheet, it is only such information that would come to public light. This imbalance has been recognized, inter alia, to hamper discovery. See Doe v. Freydin, No. 21-cv-8371, 2021 WL 4991731, at *3 (S.D.N.Y. Oct. 27, 2021). Information and allegations that are highly sensitive and of a personal nature can flow both ways. See Anonymous v. Simon, No. 13-cv-2927, 2014 WL 819122, at *2 (S.D.N.Y. Mar. 3, 2014) ("Plaintiff's allegations and public comments embarrass Defendant and place him under the same stigma that concerns Plaintiff."). Further, courts have identified prejudice where the defendant is "required to defend [himself] publicly [before a jury] while plaintiff could make her accusations from behind a cloak of anonymity." Doe v. Delta Airlines, Inc., 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (quoting Shakur, 164 F.R.D. at 361 (second alteration in original). The ultimate question is one of balance, and courts only "allow such an imbalance . . . in unique circumstances." Doe v. Fedcap Rehabilitation Servs., Inc., No. 17-CV-8220, 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018). Based on the foregoing, factor six weighs against Plaintiff.

The seventh factor, whether Plaintiff has maintained her confidentiality, weighs in her favor. There is nothing, other than the commencement of this lawsuit, to indicate that Plaintiff has made any of the facts surrounding this lawsuit or her involvement in it public.

Factor eight considers the public's interest in the litigation. As noted above, there is a public interest in maintaining the public nature of the docket. As with factor three, Plaintiff is required to submit some evidence of harm to outweigh that interest. See Doe 1 v. Branca USA, Inc., No. 22-cv-3806, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022) ("[S]omething more is required to rebut the presumption of public access . . . and that something more frequently has to be evidence of real (and not conclusory) harm that is substantial and that will flow directly from and is directly linked to disclosure of the party's name."). As noted above, Plaintiff has failed to provide anything more than speculative harm. Moreover, there is a recognized public interest in "being able to publicly confront an accuser." Combs, 2024 WL 863705, at *5; see also Doe v. Leonelli, No. 22-cv-3732, 2022 WL 2003635, at *4 (S.D.N.Y. June 6, 2022) (noting the public's interest in "open judicial proceedings," which is furthered "by transparency, including exposure of the parties' identities"). Accordingly, this factor weighs against Plaintiff.

The ninth factor asks "whether, because of the purely legal nature of the issues presented . . ., there is an atypically weak public interest in knowing the litigants' identities." Sealed Plaintiff, 537 F.3d at 190. There are no abstract questions of law at issue here. Plaintiff's claims are entirely "factual in nature, which weighs against anonymity." Combs, 2025 WL 268515, at *5.

Finally, factor ten considers whether there are alternative mechanisms available to protect Plaintiff. This last factor has been recognized as perhaps the most important since courts have the ability, as a case progresses through discovery, to redact sensitive information. See Sealed Plaintiff, 537 F.3d at 190. Here, the Court finds that such protections exist. While the Plaintiff's name will be made public if her motion is denied, the Court finds that certain information may be redacted from the docket. Moreover, the parties can enter into a confidentiality agreement. While

such information may be required to be made public at some point in the proceedings, there are multiple ways Plaintiff's interests can be protected other than complete anonymity.

Based on the foregoing, and upon weighing all of the factors enumerated by the Second Circuit, this Court holds that Plaintiff has failed to sustain her burden of overcoming the presumption of maintaining a legal docket that is open to the public. Accordingly, Plaintiff's identity must be placed upon the public docket. Defendant's cross-motion to proceed pseudonymously is similarly denied.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not met the burden necessary to permit her to continue to appear herein under a pseudonym. Plaintiff is directed to file an Amended Complaint setting forth her identity within two (2) weeks of the date of this Order. Defendant's cross-motion to proceed via a pseudonym is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      April 16, 2026

          /s/ Anne Y. Shields
          ANNE Y. SHIELDS
          United States Magistrate Judge