# VERIDIAN
# LEGAL

23 West 73rd Street    T: (212) 706-1007
Suite 102            F: (646) 849-0033
New York, NY 10023   www.veridianlegal.com

June 12, 2026

**<u>Via ECF</u>**
Honorable Joanna Seybert
Eastern District of New York

**Re:**    ***Campos v. Ingber et al.***
        ***United States District Court, Eastern District of New York***
        ***Docket No. 1:25-cv-05478 (JS)(AYS)***

Your Honor,

Please accept this letter – sent on behalf of plaintiff Cristina Campos ("Plaintiff") – opposing Defendants' request for a pre-motion conference prior to their filing of a Motion to Dismiss Plaintiff's Amended Complaint.

Plaintiff experienced years of covert surveillance, psychological manipulation, and harassment undertaken by Defendant Ronald David Ingber ("Ingber") – a licensed attorney (Am. Compl. ¶¶ 1-17). During the parties' relationship, Ingber secretly installed hidden cameras in Plaintiff's apartment, planted a GPS tracker and audio recorder in her car, installed a keystroke logger on her laptop, and gained unauthorized access to her phone, email, iCloud, and Google accounts (Am. Compl. ¶¶ 59-66). He isolated Plaintiff by convincing her to move to a New York apartment he rented for her, quit her job, and become financially dependent on him (Am. Compl. ¶¶ 48-53). When Plaintiff tried to leave, Ingber fabricated a criminal investigation – complete with a manufactured email from a prosecutor's office – to terrorize her into staying and hired private investigators to follow her and her family to lend credibility to the ruse (Am. Compl. ¶¶ 93-106, 113-119). He then disseminated Plaintiff's intimate images and private medical records to her family, friends, and colleagues, and sent anonymous communications falsely portraying her as a prostitute (Am. Compl. ¶¶ 97, 121-122, 128). Ingber's harassment has continued through at least early 2025, with anonymous messages referencing Plaintiff's real-time location and workplace (Am. Compl. ¶¶ 167-172). Tragically, Plaintiff's ex-boyfriend, who was also targeted by Ingber's harassment, took his own life four months after filing a police report identifying Ingber as his harasser (Am. Compl. ¶ 165). After being placed on notice of this lawsuit, Ingber transferred the marital home - his principal asset - to his wife, Defendant Amy Ingber ("Amy") for no consideration in a transparent effort to render himself judgment-proof (Am. Compl. ¶¶ 206-211). Defendants now argue for dismissal of Plaintiff's Amended Complaint.

### Improper Service of Complaint

Plaintiff first learned of the service issue when Ingber raised it in his initial motion to dismiss. Since that time, Plaintiff has filed a Motion to Extend the Time to Serve, which was granted. Plaintiff's Motion to Extend detailed the circumstances surrounding service which were outside Plaintiff's control, namely the process server's sworn proof of service which indicated had been served and contained an overwhelmingly accurate description of Ingber; images of Ingber's home and a car parked outside his home; and Ingber's counsel's prompt filings on the docket immediately following service.

Veridian Legal P.C.



Campos v. Ingber et al.
Page 2

### *Defendant Ingber's Dissemination of Plaintiff's Intimate Images*

Defendants argue for dismissal of Plaintiff's state and federal causes of action for nonconsensual dissemination due to New Jersey's two-year statute of limitations for its law against the dissemination of intimate imagery based on the lack of an explicit statute of limitations in the federal law and New York's borrowing statute. Defendants' arguments are deliberately misplaced for the purposes of taking advantage of New Jersey's shorter statute of limitations. Ingber resided in the State of New York when he disseminated Plaintiff's intimate content (Am. Compl. ¶26). Plaintiff resided in the State of New York when Ingber disseminated her intimate content (Am. Compl. ¶¶ 12-13, 120-123). Plaintiff resided in the State of New York when she learned her intimate content had been disseminated (*Id.*).

In a case where defendants secretly recorded a plaintiff without her consent and then displayed those videos to third parties, a New York court held the privacy "cause of action accrued when the injury in fact occurred, i.e., when the videotapes were displayed to third persons for purposes of trade" (*Dana v Oak Park Mar.*, 230 AD2d 204, 211 [4th Dept 1997]). The same court held that the emotional distress claim accrued when she "first learned that she had been videotaped while undressing" (*Id.*). While Plaintiff did, ultimately, move out of the parties' shared apartment on Long Island, this was after Ingber had begun disseminating her intimate content and after she learned her intimate content was being disseminated. Accordingly, the causes of action brought due to Ingber's nonconsensual dissemination of Plaintiff's intimate imagery accrued in New York and the three-year statute of limitations applies.

### *False Light Invasion of Privacy, Publicity, Intrusion Upon Seclusion, & Transmission of STD*

Defendants argue for the dismissal of the above-referenced causes of action pursuant to applicable two-year statutes of limitation. Here, although Plaintiff was aware that she had contracted the sexually transmitted disease, she did not learn Ingber was the source of her infection until recently because Ingber actively and fraudulently convinced her that he was not the person who exposed her to the disease (Am. Compl. ¶¶ 37-41, 275-281). Under the doctrine of equitable estoppel, a defendant may be estopped from pleading the statute of limitations where the plaintiff was induced by fraud, misrepresentations, or deception to refrain from filing a timely action, and the plaintiff reasonably relied on the defendant's misrepresentations. The same arguments apply for Plaintiff's Invasion of Privacy claims.

### *Aiding and Abetting and Fraud*

Defendants argue this cause of action is also time-barred and subject to New Jersey's shorter statute of limitations. In support of this, Defendants claim that "Plaintiff does not allege that any conduct occurring after November 2022 involved third parties" however that is not true. Plaintiff's Amended Complaint includes allegations against John Does through February 1, 2025 (Am. Compl. ¶¶168-173). As for Plaintiff's fraud cause of action, it is properly governed by CPLR 213(8), which provides that the statute of limitations for fraud is the greater of six years from accrual or two years from discovery. Here, the fraudulent scheme was perpetrated in New York, where Ingber rented an apartment for Plaintiff, fabricated a criminal investigation to frighten her into remaining under his control, and made the affirmative misrepresentations that form the basis of Plaintiff's fraud claim. Defendants' reliance on New Jersey's two-year statute of limitations for fraud is misplaced because the borrowing statute does not apply where the



Campos v. Ingber et al.
Page 3

cause of action accrued in New York. While Plaintiff did, in fact, begin to appreciate and recognize some of Ingber's multitude of misrepresentations in November 2022, the Amended Complaint provides that she continues to struggle to come to terms with the truth. In any event, the six-year statute of limitations for fraud has not run.

### N.Y. Civil Rights Law §79-n

Defendants argue this cause of action is not timely due to it being governed by New York's borrowing statute. Again, the bulk of the conduct Ingber undertook against Plaintiff occurred while both parties resided in New York. There is no need to apply the borrowing statute to a New York cause of action where the injury occurred in the State of New York.

### Intentional Infliction of Emotional Distress

Defendants assert that Plaintiff's IIED claim is time-barred because the most recent harassment were only harassing text messages and "perceived unkindness has no remedy at law[.]" Respectfully, the most recent text messages sent by Ingber or someone acting on his behalf go far beyond unkindness and serve as a continuation of the course of conduct designed to threaten Plaintiff and make her question her sanity, safety, and reality. Ingber's most recent conduct – put in the context of the years of abuse Plaintiff previously endured and the known fears Ingber was exploiting – rises to the level of extreme and outrageous conduct.

### Voidable Transfer, Civil Conspiracy, and Unjust Enrichment

Regarding the voidable transfer claim, Defendants argue that Plaintiff lacks standing as a creditor because her claims are time barred, that she has no "right to payment" because she is not a creditor, that the transfer of the house should be presumed legitimate absent evidence of concealment or insolvency, that Plaintiff has not alleged insolvency, and that Plaintiff failed to plead actual intent with particularity. The DCL defines "creditor" broadly. A "claim" includes any right to payment, whether or not reduced to judgment, liquidated, or contingent (DCL § 270[a]). Under longstanding New York law, a plaintiff with an unliquidated tort claim qualifies as a "creditor" even before judgment. As the court held in *Leifer v. Murphy*, 149 Misc. 455, 458 (Sup. Ct. 1933), "an unliquidated ex delicto claim is a 'debt' and the holder thereof is a 'creditor[.]'"

Under the current version of N.Y. Debt. & Cred. Law § 273(a), a transfer is voidable "whether the creditor's claim arose before or after the transfer was made" (*Silber Inv. Props., Ltd. v BJG Islandia Realty, LLC*, 236 AD3d 953, 956 [2d Dept 2025]). Opposing counsel conflates the elements of actual intent fraud (§ 273(a)(1)) with constructive fraud (§§ 273(a)(2) and 274). Under § 273(a)(1), the only requirement is "actual intent to hinder, delay or defraud any creditor." Insolvency is merely one of eleven non-exclusive "badges of fraud" that courts may consider under § 273(b)(9) - it is not an element (*see Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999]). Defendants' reliance on *In re Sharp Int'l* for the proposition that insolvency must be alleged conflates the constructive fraud standard with the actual intent standard and, regardless, is alleged in the Amended Complaint. Further, "insolvency need not be pleaded or proved where a conveyance is attacked as made with intent to defraud creditors" (*Golden Budha Corp. v Canadian Land Co., N.V.*, 931 F2d 196, 201 [2d Cir 1991]). Here, the Amended Complaint alleges virtually every statutory badge of fraud under §273(b), including transfer to an insider, no consideration, retention of possession, timing after receipt of the litigation hold letter, concealment by delayed



Campos v. Ingber et al.
Page 4

recording, transfer of substantially all assets, and imminent liability. This exceeds the particularity threshold. Defendants' claim the transfer is "presumed legitimate" mischaracterizes the law. This transfer was for no consideration, there has been no divorce filing, and the transfer occurred after Plaintiff made clear she would not forfeit her right to sue Ingber. When a transfer is made without fair consideration, a presumption of insolvency and fraudulent transfer arises, shifting the burden to the transferee (*Cheek v Brooks,* 188 AD3d 785, 786 [2d Dept 2020]). Concerning civil conspiracy "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme." (*McSpedon v Levine*, 158 AD3d 618, 621 [2d Dept 2018]). Here, the underlying actionable tort is the fraudulent transfer itself - a statutory wrong under the DCL.

Plaintiff's unjust enrichment claim is not a "catchall" as it targets a different defendant than the fraudulent conveyance claim and seeks different relief. Amy was enriched by receiving the Dix Hills Residence without paying consideration and, under principles of equity and good conscience, Amy Ingber should not be permitted to retain the property she received through a fraudulent transfer designed to defeat Plaintiff's claims. Additionally, Amy is Ingber's wife; she had direct knowledge of the Domestic Violence Case and knowingly accepted the parties' marital home for no consideration thereafter. The Suffolk County action is irrelevant as the filing was rejected.

Plaintiff does not plead civil conspiracy as an independent tort but rather pleads it to connect the actions of the individual defendants with an actionable underlying wrong – the fraudulent transfer – which is a statutory wrong under the DCL. As for unjust enrichment, Defendants' claim they have no "direct relationship" is absurd. Amy received the marital home for no consideration with full knowledge of the domestic violence case and Plaintiff's intent to sue her husband. Moreover, unjust enrichment does not require privity, only that defendant was enriched at plaintiff's expense and that equity and good conscience require restitution.

### *Motion to Strike*

Defendants claim multiple unspecified portions of Plaintiff's Amended Complaint should be stricken, namely those involving "fat-shaming." The Amended Complaint mentions Ingber's weight on five occasions. The first is relevant because it relates to the boils Plaintiff developed following sexual intercourse; the second and third casually reference Plaintiff believing Ingber's weight was an insecurity to him which led to her excusing otherwise strange and unacceptable behavior; the fourth is verbiage from Ingber's dating profile in which he twice brought up his weight; and the fifth is language from a psychiatric evaluation of one of Ingber's ex-girlfriends which Ingber sent to Plaintiff and which mirrors Plaintiff's own experiences with Ingber. Each mention of Ingber's weight is relevant to Plaintiff's Amended Complaint for various reasons.

Respectfully submitted,

VERIDIAN LEGAL P.C.
*/s/ Daniel Szalkiewicz*
By: Daniel S. Szalkiewicz, Esq.

Veridian Legal P.C.